IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiff, v. THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A", Defendants. | Case No. 25-cv-12667 DEMAND FOR JURY TRIAL |

**AMENDED COMPLAINT**

▮▮▮▮▮▮▮▮▮▮ ("Plaintiff") by and through its undersigned counsel, hereby files this Amended Complaint for copyright infringement under the Copyright Act against the Partnerships and Unincorporated Associations Identified in Amended Schedule "A" ("Defendants"). In support hereof, Plaintiff states as follows:

**I.      JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Copyright Act, 17 U.S.C. § 101, et seq., and 28 U.S.C. § 1338(a)-(b).

2. Venue is proper in this court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each Defendant directly targets business activities toward consumers in the United States, including Illinois, through their operation of or assistance in the operation of the fully interactive, commercial internet stores operating under the Defendant domain names and/or the Defendant Internet Stores identified in Amended Schedule "A". Specifically, each Defendant directly reaches out to do business with

1

Illinois residents by operating or assisting in the operation of one or more commercial, interactive e-commerce stores that sell products using infringing versions of Plaintiff's federally registered copyrighted works to Illinois consumers. In short, each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II.   INTRODUCTION

3.   Plaintiff files this action to combat online infringers who trade upon Plaintiff's reputation by using Plaintiff's copyrighted works (███ ███ ███ ███████ ██████ ███████ ███████ ██ █████████) (the "████████ ██████████") in connection with the sale and advertising of their products. *See* **Exhibit 1**. Like many other intellectual property right owners, Plaintiff suffers ongoing daily and sustained violation of its intellectual property rights at the hands of infringers, such as Defendants herein. Defendants have created internet stores ("Defendant Internet Stores" or "Stores") by the dozens, using and displaying copies and derivative works of the ████████████████████ to sell imitation versions of Plaintiff's signature product to unknowing customers. Plaintiff is and continues to be harmed, the consuming public is misled and confused, and Defendants earn substantial profits from their infringing activities.

4.   The Defendant Internet Stores share unique identifiers, such as similar design elements of the products they offer for sale and, on information and belief, these similarities suggest that the Defendant Internet Stores share common manufacturing sources, thus establishing that the Defendants' infringing operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants have gone to great lengths to avoid liability by concealing both their identities and the full scope and interworking of their counterfeit operation,

including changing the names of their Stores multiple times, opening new Stores, helping their friends open Stores, and making subtle changes to their products. Plaintiff has been forced to file this action to combat Defendants' willful infringement of Plaintiff's copyrighted works as well as to protect unknowing consumers from purchasing inferior products over the Internet. Because of Defendants' actions, Plaintiff has been and continues to be irreparably damaged through his loss of his lawful right to exclude others from using his copyrighted work to market the Plaintiff's products. Accordingly, Plaintiff seeks injunctive and monetary relief.

### III. PARTIES

**Plaintiff** ▮

5. Plaintiff is an ▮ and is the creator and seller of high-quality, ▮ (the "▮ Products"). Plaintiff sells these products through their ▮ brand. The ▮ Products have become enormously popular, driven by Plaintiff's exacting quality standards and innovative design. Among the purchasing public, genuine Products are instantly recognizable as such in the United States and around the world.

6. Plaintiff is the owner of several registered copyright registrations ▮ ). The registration information for the ▮ Works and copies of the corresponding images are shown in **Exhibit 1** attached hereto. Plaintiff uses the ▮ Works in connection with advertising and demonstrating the ▮ Products. Upon information and belief, the copyright registrations have an effective date that predates the Defendants' acts of copyright infringement.

3

7. Since their first publication, the ▮▮▮ Works have been used to sell ▮▮▮ Products. Plaintiff's products and its accompanying copyrighted works have been the subject of substantial and continuous marketing and promotion by Plaintiff throughout the United States and, due to its strong internet presence, throughout the entire world.

8. Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive right to reproduce, distribute, and display the ▮▮▮ Works to the public. Plaintiff has never granted authorization to Defendants to use Plaintiff's copyrighted works to advertise, market, or promote unauthorized goods.

9. Plaintiff sells its ▮▮▮ Products through its website [1] and Amazon storefront.[2] Plaintiff created the unique ▮▮▮ Product after observing an utter lack of options for safe, effective, and fun ▮▮▮. Plaintiff has been and continues to heavily market and promote its unique products using its federally registered works on its website, social media, advertisements, and product demonstration videos. Its website and social media feature original content, reviews, and testimonials for ▮▮▮ Products.

10. Plaintiff is the manufacturer, distributor, and retailer of genuine ▮▮▮ Products. It is engaged in the business of distributing and retailing these ▮▮▮ ▮▮▮ within the Northern District of Illinois. Defendants' sales of the knockoff products by using Plaintiff's copyrighted works in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

---

[1] ▮▮▮

4

**Defendants**

11. Defendants are individuals and entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and in this Judicial District, through the operation of fully interactive commercial websites or Defendant Internet Stores in various online commercial marketplaces. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell knockoff products to consumers within the United States, including Illinois and this Judicial District, with Plaintiff's copyrighted works.

12. Defendants are an interrelated group of infringers who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine ▮▮▮▮▮ Products by unlawfully using Plaintiff's copyrighted works, while they actually sell inferior imitations of Plaintiff's ▮▮▮▮▮ Products. The Defendant Internet Stores share unique identifiers, such as common design elements, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, and identically or similarly priced products and volume sale discount. As such, the Defendant Internet Stores establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same transaction or occurrence. The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

**IV.    DEFENDANTS' UNLAWFUL CONDUCT**

13. The success of Plaintiff's product has resulted in significant infringement. Consequently, Plaintiff has identified numerous marketplace listings on e-commerce platforms such as, but not limited to, ▇▇▇▇ and ▇▇▇▇, that include the Defendant Aliases and which have been offering for sale, completing sales, and exporting unauthorized products to consumers in this Judicial District and throughout the United States using Plaintiff's copyrighted works. Defendants have persisted in creating the Defendant Aliases. E-commerce sales, including e-commerce internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* **Exhibit 2**, U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*. According to Customs and Border Patrol's ("CBP") report, from Fiscal Year (FY) 2020 to FY 2024, the total number of goods seized for IPR violations has more than doubled. In addition to seizure, CBP executed 99,959 alternative enforcement actions, such as abandonment and destruction. *Id.* China and Hong Kong are consistently the top two for IPR seizures. In FY 2024, seizures from China and Hong Kong accounted for approximately 90% of the total quantity seized. *Id.* The vast majority of IPR seizures continue to take place within the express consignment and mail shipping methods. In FY 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments. *Id.* Counterfeit and pirated products account for billions of dollars in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

14. Groups of counterfeiters, such as Defendants here, are typically in communication with each other. They regularly participate in QQ.com chat rooms and communicate through

6

websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

15. Counterfeiting rings take advantage of the anonymity provided by the internet, which allows them to evade enforcement efforts to combat counterfeiting. For example, counterfeiters take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." *See* **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendants may and do garner sales from Illinois residents by setting up and operating e-commerce internet stores that target United States consumers using one or more aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, have sold counterfeit products to residents of Illinois.

16. Upon information and belief, at all relevant times hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of the ▮▮▮▮▮▮▮▮▮ Works, including his exclusive right to use and license such works. Defendant Internet Stores nevertheless use the works to advertise their products as the Plaintiff does on his storefront, sowing confusion among potential purchasers.

17. Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant domain names often use privacy services that conceal the owners' identity and

7

contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Amended Schedule A of this Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

18. The unauthorized products advertised and for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the infringing products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

19. Upon information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully use Plaintiff's ▇▇▇▇ Works in connection with the advertisement, distribution, offering for sale, and sale of their products over the internet in the same transaction, occurrence, or series of transactions or occurrences. Each e-commerce store operating under the Seller Aliases offers shipping to the United States and Illinois, and, on information and belief, each Defendant has sold their products using the ▇▇▇▇ Works without authorization in the United States and Illinois over the internet.

20. Defendants' use of the ▇▇▇▇ Works in connection with the advertising, distribution, offer for sale, and sale of knockoff products, including the sale of knockoff products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

8

21. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling products using infringing versions of Plaintiff's ███████ ███████ Works unless preliminarily and permanently enjoined.

## COUNT I

## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))

22. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 21.

23. Plaintiff's ███████████ Works have significant value and have been produced and created at considerable expense. Plaintiff is the owner of each original work, and all works at issue have been registered with the U.S. Copyright Office. *See* **Exhibit 1**.

24. Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including, but not limited to, the Plaintiff's ███████████ Works, including derivative works.

25. Upon information and belief, Defendants had access to the works through Plaintiff's normal business activities. After accessing Plaintiff's works, Defendants wrongfully created copies of the ███████████ Works without Plaintiff's consent and engaged in acts of widespread infringement through publishing and distributing the ███████████ Works via online websites and digital markets in connection with the marketing of their counterfeit products.

26. Plaintiff is informed and believes and thereon alleges that Defendants further infringed Plaintiff's copyrights by making or causing to be made derivative works from Plaintiff's works by producing and distributing reproductions without Plaintiff's permission.

9

27. Defendants, without the permission or consent of Plaintiff, have published online infringing derivative works of the ▬▬▬▬▬▬▬▬ Works. Defendants have violated Plaintiff's exclusive rights of display, reproduction, and distribution. Defendants' actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act, 17 U.S.C. § 101, et seq.

28. Further, as a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not have otherwise realized but for their infringement of the copyrighted Plaintiff's ▬▬▬▬▬▬▬▬ Works. Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of the ▬▬▬▬▬▬▬▬ Works.

29. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts, and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

30. As a result of Defendants' infringement of Plaintiff's exclusive rights under its copyrights, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504, and to recovery of its costs and attorneys' fees pursuant to 17 U.S.C. § 505.

31. The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502-503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyrights and ordering that Defendants take down and destroy all unauthorized copies. Defendants' copies, digital files, and other embodiments of Plaintiff's copyrighted works from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of

infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff, under 17 U.S.C. § 503.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    i. using the ▮▮▮▮▮ Works or any reproductions, copies, or colorable imitations thereof in any manner with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized ▮▮▮▮▮ Product or is not authorized by Plaintiff to be sold in connection with the ▮▮▮▮▮ Works;

    ii. passing off, inducing, or enabling others to sell or pass off any product or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the ▮▮▮▮▮ Works;

    iii. reproducing, publicly displaying, distributing, or otherwise infringing the ▮▮▮▮▮ Works;

    iv. further infringing the ▮▮▮▮▮ Works and damaging Plaintiff's goodwill;

    v. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which

        directly use the ▇▇▇▇ Works, and which are derived from Plaintiff's copyrights in the ▇▇▇▇ Works; and

  vi.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which are derived from Plaintiff's copyrights in the ▇▇▇▇ Works; and

B.  Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: ▇▇▇▇ and ▇▇▇▇; payment processors such as: PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, and Twitter; Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names; and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of knockoff products using the Plaintiff's copyrights; shall:

  i.  disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff which reproduce the ▇▇▇▇ Works or are derived from the ▇▇▇▇ Works, including any accounts associated with the Defendants listed on Amended Schedule A;

  ii.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which are derived from the ▇▇▇▇ Works; and

    iii.    take all steps necessary to prevent links to the Defendant accounts identified on Amended Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant accounts from any search index; and

C. For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered copyrights pursuant to 17 U.S.C. §501; and b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

D. For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. §504, at the election of Plaintiff, in an amount to be determined at trial;

E. In the alternative, that Plaintiff be awarded statutory damages pursuant to 17 U.S.C. §504(c)(2) of $150,000 for each and every use of Plaintiff's copyrighted works;

F. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

G. That Plaintiff be awarded any and all other relief that this Court deems equitable and just. Plaintiff demands trial by jury as to all causes of action so triable.

Dated: October 30, 2025                              Respectfully submitted,

<u>/s/ James E. Judge</u>

Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Ying Chen (IL Bar No. 6346961)
Flener IP Law, LLC
77 West Washington Street, Suite 800
Chicago, Illinois 60602
(312) 724-8874
jjudge@fleneriplaw.com